Redacted
Version

No. 25-1739C
(Judge Meriweather)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

BID PROTEST

SCIENCE APPLICATIONS INTERNATIONAL CORPORATION,

Plaintiff,

v.

UNITED STATES,

Defendant,

and

CACI NSS, LLC,

Defendant-Intervenor.

## DEFENDANT'S REPLY IN SUPPORT OF ITS
## CROSS-MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

DOUGLAS K. MICKLE
Acting Deputy Director

OF COUNSEL:

ROGER A. HIPP
Senior Attorney
Office of the General Counsel
Department of Homeland Security

JOSHUA A. MANDLEBAUM
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 532-5409
joshua.a.mandlebaum@usdoj.gov

December 19, 2025

Attorneys for Defendant

████████████████████

## TABLE OF CONTENTS

ARGUMENT ........................................................................................................................1

I.    DHS Rationally Evaluated SAIC's Quote Under Factor 2 ...................................1

    A.    DHS Rationally Evaluated SAIC's Proposed Program Manager ............................1

    B.    DHS Rationally Determined That SAIC's Quote Included Factually Incorrect Information, And DHS Was Not Obligated To Allow SAIC To Correct The Error ........................................................................................3

    C.    DHS Rationally Assessed That SAIC's Quote Conflicted With Consistency And Reliability Goals ..............................................................5

        i.    DHS Rationally Criticized SAIC's ███████ References / Principles ...........................................................................................5

        ii.    Consistency And Reliability Were Not Unstated Evaluation Factors ..............7

    D.    DHS Rationally Assessed That SAIC's Quote Reflected Outdated Technical Knowledge ..........................................................................7

II.    DHS Did Not Engage In Disparate Treatment Under Factors 2 and 3 ...............8

    A.    The Quotes Were Not Substantively Indistinguishable ...........................................8

    B.    DHS Fairly Evaluated the Quotes ........................................................................11

    C.    SAIC Was Not Prejudiced By Any Error In The Factor 3 Evaluation .................11

III.    DHS Rationally Conducted The Best Value Tradeoff ........................................12

    A.    The Agency Reasonably Treated Price As The Least Important Factor ...............12

    B.    DHS Rationally Determined Best Value and Documented Its Rationale ..............14

IV.    SAIC Has Not Established Prejudice ...................................................................15

V.    SAIC Is Not Entitled To Injunctive Relief ........................................................16

CONCLUSION ..................................................................................................................16

## TABLE OF AUTHORITIES

Cases

*AccelGov, LLC v. United States*,
174 Fed. Cl. 212 (2024) .......................................................................................... 6

*Ahtna Logistics, LLC v. United States*,
163 Fed. Cl. 488 (2022) ........................................................................................ 13

*Allied Tech. Grp., Inc. v. United States*,
94 Fed. Cl. 16 (2010) ............................................................................................ 15

*Aspire Therapy Servs. & Consultants*,
166 Fed. Cl. 366 (2023) .......................................................................................... 5

*Assured Consulting Sols., LLC v. United States*,
177 Fed. Cl. 212 (2025) .......................................................................................... 6

*Banknote Corp. of Am., Inc. v. United States*,
56 Fed. Cl. 377, 384 (2003) .................................................................................... 8

*BCPeabody Constr. Servs., Inc. v. United States*,
112 Fed. Cl. 502 (2013) .......................................................................................... 5

*Blue & Gold Fleet, LP v. United States*,
492 F.3d 1308 (Fed. Cir. 2007) ............................................................................ 13

*Centerra Security Servs. GmbH v. United States*,
176 Fed. Cl. 219 (2025) ..................................................................................... 2, 3

*Constellation W., Inc. v. United States*,
125 Fed. Cl. 505 (2015) ..................................................................................... 4, 16

*Crowley Gov't Servs. v. United States*,
158 Fed. Cl. 358 (2022) .......................................................................................... 2

*Dell Fed. Sys., L.P. v. United States*,
906 F.3d 982 (Fed. Cir. 2018) ............................................................................ 4, 5

*DynCorp Int'l, LLC v. United States*,
10 F.4th 1300 (Fed. Cir. 2021) ............................................................................. 16

*E.W. Bliss Co. v. United States*,
77 F.3d 445 (Fed. Cir. 1996) .................................................................................. 6

*Galen Med. Assocs. v. United States*,
369 F.3d 1324 (Fed. Cir. 2004) .............................................................................. 8

*Garrett Elecs., Inc. v. United States*,
   163 Fed. Cl. 632 (2023) ........................................................................................... 16

*Griffy's Landscape Maint. LLC v. United States*,
   46 Fed. Cl. 257 (2000) .............................................................................................. 5

*HWA, Inc. v. United States*,
   78 Fed. Cl. 685 (2007) ....................................................................................... 13, 14

*IBM Corp. v. United States*,
   119 Fed. Cl. 145 (2014) ............................................................................................ 5

*Inserso Corp. v. United States*,
   961 F.3d 1343 (Fed. Cir. 2020) ............................................................................. 13

*Integrated Fin. & Acct. Sols., LLC v. United States*,
   161 Fed. Cl. 475 (2022) ........................................................................................ 4, 5

*LB&B Assocs., Inc. v. United States*,
   160 Fed. Cl. 710 (2022) .......................................................................................... 16

*ManTech Advanced Sys. Int'l, Inc. v. United States*,
   141 Fed. Cl. 493 (2019) ........................................................................................ 4, 5

*Mission1st Grp., Inc. v. United States*,
   144 Fed. Cl. 200 (2019) ............................................................................................ 5

*Novosteel SA v. United States*,
   284 F.3d 1261 (Fed. Cir. 2002) ............................................................................. 13

*Oak Grove Techs., LLC v. United States*,
   116 F.4th 1364 (Fed. Cir. 2024) ............................................................................ 13

*Off. Design Grp. v. United States*,
   951 F.3d 1366 (Fed. Cir. 2020) ..................................................................... 9, 10, 11

*ST Net, Inc. v. United States*,
   112 Fed. Cl. 99 (2013) .............................................................................................. 5

*Sys. Stud. & Simulation, Inc. v. United States*,
   22 F.4th 994 (Fed. Cir. 2021) ................................................................................. 16

*Tech. Innovation Alliance LLC v. United States*,
   149 Fed. Cl. 105 (2020) ........................................................................................ 9, 10

*Trillion ERP Venture Tech LLC v. United States*,
   161 Fed. Cl. 531 (2022) .......................................................................................... 11

█████████████████████████

*Vantage Assocs., Inc. v. United States*,
    59 Fed. Cl. 1 (2003) ........................................................................................ 11


<u>Regulations</u>

48 C.F.R. § 15.306(a)(2) ..................................................................................... 4

48 C.F.R. § 15.308 .............................................................................................. 15


<u>Other Authorities</u>

GAO-20-590G, *Agile Assessment Guide* (2020) ................................................ 6

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

BID PROTEST

SCIENCE APPLICATIONS                )
INTERNATIONAL CORPORATION,           )
                                     )
            Plaintiff,               )
                                     )
                                     )    No. 25-1739C
      v.                             )    ( udge Meriweather)
                                     )
UNITED STATES,                       )
                                     )
            Defendant,               )
                                     )
      and                            )
                                     )
CACI NSS, LLC,                       )
                                     )
            Defendant-Intervenor.    )

DEFENDANT'S REPL   IN SUPPORT OF ITS
CROSS-MOTION FOR  UDGMENT ON THE ADMINISTRATIVE RECORD

Defendant respectfully submits this reply to plaintiff, Science Applications International

Corp.'s (SAIC) response to our cross-motion for judgment on the administrative record, ECF

No. 26 (Pl. Resp.).

ARGUMENT

I.      DHS Rationally Evaluated SAIC's Quote Under Factor 2

        A.      DHS Rationally Evaluated SAIC's Proposed Program Manager

We demonstrated in our opening brief that the Department of Homeland Security (DHS

or agency) rationally relied in part on the fact that CACI NSS, LLC's (CACI) program manager

has e perience wor ing with DHS, while SAIC's program manager does not.  ECF No. 26 (USA

Mot.) at 7-10  *see Crowley Gov't Servs. v. United States*, 158 Fed. Cl. 358 (2022) (giving

strengths to incumbent ey personnel for agency-specific e perience was not an unstated evaluation criterion).

In response, SAIC concedes that "DHS may recognize legitimate incumbency benefits associated with another offeror's Program Manager," and that "DHS could credit relevant DHS e perience . " Pl. Resp. at 4.

Nevertheless, SAIC tries to distinguish between crediting the incumbent for agency-specific e perience and allegedly "downgrading" SAIC for lac of similar e perience. Pl. Resp. at 4. This is a distinction without a difference. The contracting officer and source selection official commented on SAIC's lac of DHS e perience at the best value decision stage, when comparing the proposals against each other. Tab 103 at AR 2702 Tab 104 at AR 2717. If the agency may view CACI's DHS e perience as a "credit" which SAIC concedes is permissible that credit would be meaningless if the agency could not use it to distinguish between the proposals. DHS preferred CACI's proposal in part for this reason. Calling this a "downgrade" of SAIC, rather than a credit to CACI, does not change the essence of the agency's rationale. Moreover, SAIC does not distinguish *Crowley*. *See Crowley*, 158 Fed. Cl. 358.

SAIC relies on *Centerra Security Servs. GmbH v. United States*, 176 Fed. Cl. 219 (2025). Pl. Resp. at 3-5. In *Centerra*, the agency deemed the protester's past performance references to be merely "relevant," rather than "very relevant," because none of them matched the place of performance (Germany). 176 Fed. Cl. at 235. The Court held that this was an unstated evaluation factor. *Id.* at 236.

*Centerra* is distinguishable for two reasons. First, in *Centerra*, the challenged findings were made in the technical evaluation phase, not in the best value decision phase where comparisons occur. Here, by contrast, the technical evaluators did not comment on SAIC's lac

2



of DHS e perience. Tab 101 at AR 2671. The benefit of CACI's prior DHS e perience was first noted when DHS compared the proposals at the best value decision phase, which was entirely appropriate.

Second, in *Centerra*, the agency had impermissibly imported evaluation criteria from one factor to another. Per the solicitation, the agency's interest in Germany-specific e perience related to the "technical" factor, rather than the past performance factor. *Centerra*, 176 Fed. Cl. at 235. Here, by contrast, the stated evaluation criteria "Qualifications of the proposed ey personnel regarding the e perience in similar projects," Tab 58g at AR 612 pertain to the evaluation factor at issue. Thus, the agency reasonably found that DHS-specific e perience was a basis to distinguish between the proposals.

> B. DHS Rationally Determined That SAIC's Quote Included Factually Incorrect Information, And DHS Was Not Obligated To Allow SAIC To Correct The Error

SAIC restates its previous argument that the agency should not have commented negatively on a factually incorrect statement in its uote. Pl. Resp. at 5-8.

SAIC claimed it ███████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████ Tab 88 at AR 1990

(emphasis added). In fact, this wor had not been done. USA Mot. at 14-19.

SAIC contends that its statement was not inaccurate because it referred to a ███████ ██████ that was "to be built" by describing its capabilities in the present tense, through the word "provides." Pl. Resp. at 5. This argument is difficult to understand. When SAIC submitted its uote, the non-e istent ██████ had not previously provided, and was not presently providing, anything. It was inaccurate to describe its provisions in both the present and past tenses.

3

███████████████████████████████

As we demonstrated in our opening brief, DHS was not re uired to see  clarification of this issue, for many reasons. USA Mot. at 14-19. First, "clarification" is a term from Federal Ac uisition Regulation (FAR) 15.306 that has no parallel in FAR Part 8. *See Integrated Fin. & Acct. Sols., LLC v. United States*, 161 Fed. Cl. 475, 491 (2022).

Second, see ing clarification is always at the discretion of the agency. 48 C.F.R. § 15.306(a)(2) ("offerors *may* be given the opportunity to clarify certain aspects of proposals" (emphasis added)) *Constellation W., Inc. v. United States*, 125 Fed. Cl. 505, 550 (2015).

Third, SAIC's misstatement is not the type of clerical error that can be addressed through clarifications. *See Dell Fed. Sys., L.P. v. United States*, 906 F.3d 982, 998 (Fed. Cir. 2018) *ManTech Advanced Sys. Int'l, Inc. v. United States*, 141 Fed. Cl. 493, 507 (2019).

Fourth, the solicitation stated that DHS planned to ma e award without e  changes, notifying offerors of the need to present a correct proposal at the outset. Tab 58g at AR 613  *see Integrated Fin.*, 161 Fed. Cl. at 490.

In response, SAIC asserts that the misrepresentation could have been corrected without altering already-provided information. Pl. Resp. at 6. SAIC is incorrect. To have treated SAIC's proposal as if it said that SAIC was develop*ing* ███████ that *will* provide ███████████, rather than saying SAIC had "developed" a ██████ that "provides" ███████████, would have altered already-provided information, and thus would have gone beyond mere clarification. SAIC would have been impermissibly allowed to change its  uote after the deadline for  uote submissions.

SAIC also argues that because it offered ███████████, DHS abused its discretion by not using clarifications to correct SAIC's error. Pl. Resp. at 7. SAIC is incorrect. There are no grounds for finding that DHS abused its discretion here. The solicitation notified SAIC of the

need to present a correct proposal at the outset.  Tab 58g at AR 613  *see Integrated Fin.*, 161

Fed. Cl. at 490.  Given the number of  uotes received here from capable offerors, it was well

within DHS's discretion to ma e an award without a further effort to improve proposals.  *See*

*Mission1st Grp., Inc. v. United States*, 144 Fed. Cl. 200, 217 (2019)  *ST Net, Inc. v. United*

*States*, 112 Fed. Cl. 99, 111 n.23 (2013).  Indeed, the Court has repeatedly rejected attempts to

burden the Government with fi  ing error-ridden proposals, as we noted in our opening brief.

USA Mot. at 18-19.

Further, SAIC has not cited a FAR Part 8 case in which this Court found that the agency

had abused its discretion by not see  ing clarification.  Each of the cited cases from this Court

involve either FAR Part 15 ac  uisitions (*Dell Fed. Sys., L.P. v. United States*, 906 F.3d 982, 986

(Fed. Cir. 2018)  *Aspire Therapy Servs. & Consultants*, 166 Fed. Cl. 366, 377 (2023)  *Griffy's*

*Landscape Maint. LLC v. United States*, 46 Fed. Cl. 257, 259 (2000)  *BCPeabody Constr. Servs.,*

*Inc. v. United States*, 112 Fed. Cl. 502, 504 (2013)) or FAR Part 8 ac  uisitions where the Court

found no abuse of discretion (*ManTech Advanced Sys. Int'l, Inc. v. United States*, 141 Fed. Cl.

493, 509 (2019)  *IBM Corp. v. United States*, 119 Fed. Cl. 145, 157 (2014)).  It appears, then,

that the relief SAIC see  s is without precedent in this Court.

     C.     DHS Rationally Assessed That SAIC's Quote Conflicted With Consistency And Reliability Goals

     i.     DHS Rationally Criticized SAIC's ▮▮▮▮▮▮ References / Principles

As we e  plained in our cross-motion, the contracting officer's and source selection

official's negative comments about SAIC's ▮▮▮▮▮▮ principles" were rational.  USA Mot. at

10-13.  In response, SAIC attac  s a straw man, arguing that DHS did not fault SAIC for causing

"confusion" with its undefined references to ▮▮▮▮▮▮ references / principles      and

therefore, SAIC's argument goes, "confusion" is a post-hoc rationale.  Pl. Resp. at 8-9.

█████████████████████████████

We agree that DHS did not fault SAIC for causing "confusion" with its references to
███████████ Rather, the contracting officer and source selection officials thought SAIC's
███████ principles" involved ris s. The agency officials either understood whatever SAIC
meant by ███████ references / principles, or misunderstood. If they understood correctly,
their technical judgment was rational, and ade uately e plained for a FAR Part 8 procurement.
*E.W. Bliss Co. v. United States*, 77 F.3d 445, 449 (Fed. Cir. 1996) (" T he minutiae of the
procurement process in such matters as technical ratings . . . involve discretionary determinations
of procurement officials that a court will not second guess.") *AccelGov, LLC v. United States*,
174 Fed. Cl. 212, 230 (2024) (FAR Part 8 ac uisition re uires only "minimal documentation,"
and a comment as brief as "Framewor is stale and does not propose innovative approaches" was
sufficiently detailed to permit judicial review) *Assured Consulting Sols., LLC v. United States*,
177 Fed. Cl. 212, 225 (2025) (the protester was "not owed the e planation it see s, given that
this is a FAR Part 8.4 procurement").

If DHS misunderstood what SAIC meant, SAIC has no basis to complain on that basis,
because the cause of the confusion if any was SAIC's failure to e plain or define these
terms. USA Mot. at 11. In its response, SAIC does not e plain what these terms meant, or argue
that the contracting officer misunderstood, so this point appears moot.[1] The agency officials'
reservations about "███████ principles" were rational and within their technical judgment.

---

[1] We have identified one possible definition of these terms. A Government
Accountability Office guide summarized ████████████████████████
████████████████████████████████████
████████████████████████████
██████████████████

████████████████████████████

ii.     Consistency And Reliability Were Not Unstated Evaluation Factors

SAIC also continues to argue that "consistency" and "reliability" were unstated evaluation factors.  Pl. Resp. at 11-12.  SAIC is incorrect.  As we showed in our opening brief, DHS stated in the very first section of the statement of wor   (SOW) that DHS maintains an IT infrastructure that is "reliable, scalable, fle  ible, maintainable, accessible, and secure, ensuring operational e  cellence."  Tab 58a at AR 552.  Moreover, one of the stated goals in the purpose section of the SOW is  "OPERATIONS SUPPORT    Enable the smooth functioning of the infrastructure and service operations that support application deployment."  Tab 58a at AR 552.

SAIC now goes so far as to argue that " c onsistency and reliability sit at the opposite end of the spectrum of innovation" and that "treating them as a basis to downgrade an innovative approach contradicts Factor 2's te  t and purpose."  Pl. Resp. at 12.  SAIC's argument misunderstands Factor 2.  That factor included several subfactors, including  (1) managing service level objectives and agreements  (2) reducing program costs and finding program efficiencies  and (3) identifying, trac  ing, and reporting ris  s associated with the   uoters' proposed solutions.  Tab 58g at AR 605.  Consistency and reliability are inherent aspects of each of those subfactors, not unstated evaluation criteria.

D.     DHS Rationally Assessed That SAIC's Quote Reflected Outdated Technical Knowledge

SAIC provides no new support for its challenge to a finding by the technical evaluators that its proposed use of ████████████████████ reflects an "outdated ███████

███████ Pl. Resp. at 12-13.  The technical evaluators supported their finding with a citation to an article by an IT consultant.  Tab 101 at AR 2672, citing Tab 125 at AR 3175.  In response, SAIC offers nothing but arguments from counsel that constitute mere disagreement with the agency's technical evaluation of Factor 2.  Mere disagreements are not enough, *Banknote Corp.*

██████████████████████████████

*of Am., Inc. v. United States*, 56 Fed. Cl. 377, 384 (2003), and statements of counsel are not evidence. *Galen Med. Assocs. v. United States*, 369 F.3d 1324, 1339 (Fed. Cir. 2004).

DHS did not act irrationally by finding that SAIC's outdated ████████████████ lowered e pectations of success under Factor 2, while finding that other features of SAIC's uote raised e pectations of success under Factor 3. Tab 101 at AR 2672. There is no contradiction in saying a given feature has both advantages and disadvantages. Here, DHS could rationally find that SAIC's approach had advantages such as "████████████████

████████████████████████████████████████

████████████████████████████," Tab 103 at AR 2707, while still having the disadvantage of being based on ████████████████████. Therefore, DHS rationally evaluated SAIC's uote under Factor 2.

## II. DHS Did Not Engage In Disparate Treatment Under Factors 2 and 3

Our opening brief set forth three grounds for rejecting SAIC's disparate treatment claims under Factors 2 and 3. USA Mot. 20-27. First, SAIC fails to ma e a threshold showing that its and CACI's uotes were substantively indistinguishable. Second, DHS made a similar number of positive comments about the relevant portions of each uote. Third, SAIC was not prejudiced with respect to Factor 3, because SAIC received the highest possible technical rating for that factor. *Id*. SAIC has not refuted any of the three grounds.

### A. The Quotes Were Not Substantively Indistinguishable

SAIC argues that three sections of its uote are "substantively indistinguishable" from CACI's. Pl. Resp. at 20-28. To the contrary, the uotes are easily distinguishable. First, SAIC claims that its approach to service level agreements / objectives (SLA/SLO) uses the same "core mechanics" as CACI's, namely ████████████████████████████

8



. Pl. Resp. at 14 *compare* Tab 64 at AR 694-95 *with*

Tab 88 at AR 1992-94. SAIC's argument glosses over many differences between the two

approaches. As some non-e haustive e amples, CACI's ▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓ Tab 64 at AR 694. CACI uses ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id*. CACI's approach includes ▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓ *Id*. at AR 694-95. In comparison, SAIC's uote does not mention

▓▓▓▓▓▓▓▓ *See* Tab 88 at AR 1977-2024. Neither does SAIC's uote appear to mention

any ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓ *Id*. Thus, the ▓▓▓▓▓▓▓▓ are distinguishable, and judging the relative merit

of the different approaches is within the agency's e pertise, and not the Court's. *E.g.*, *Tech.*

*Innovation Alliance LLC v. United States*, 149 Fed. Cl. 105, 168 (2020) (" T he Court cannot

comparatively and appropriately analyze the agency's treatment of proposals without interfering

with the agency's broad discretion in these matters. And to state the obvious, the Court lac s the

technical e pertise to pass judgment as to the relative value of the labs anyway."). Therefore,

SAIC's argument is unavailing.

SAIC also fails to ma e the re uired threshold showing for its second claimed instance of

disparate treatment, the uoters' approaches to innovative cost savings measures. *See* Pl. Resp.

at 17-18. SAIC does not directly compare the two uotes. Instead, SAIC summarizes the uotes

at a high level and describes them as "materially similar." *Id*. But the test SAIC must meet is

"substantively indistinguishable," not "materially similar." *Off. Design Grp. v. United States*,

951 F.3d 1366, 1372 (Fed. Cir. 2020). In any event, the uotes also propose distinguishable

approaches for cost-saving. As non-e haustive e amples, CACI uses ▓▓▓▓▓▓▓▓▓▓

9



████████ Tab 64 at AR 696.  CACI ████████ *Id*.  CACI has a ████████ including, among other things, ████████ *Id*. at AR 696-97.  SAIC does not appear to use ████████ . *See* Tab 88 at AR 1977-2024.[2]

SAIC's uote, on the other hand, relies in part on undefined ████ principles."  Tab 88 at AR 1995.  As discussed above, DHS could rationally view this as a wea ness.  SAIC disagrees with DHS's judgment, but does not claim that CACI also uses ████ principles.  Pl. Resp. at 17.  Thus, SAIC effectively concedes that the proposals are substantively distinguishable re uiring dismissal of its disparate-treatment claim.  *Off. Design Grp.*, 951 F.3d at 1372.

Finally, for its third claimed instance of disparate treatment, SAIC alleges that it proposed the "same ████████ elements for which DHS e plicitly credited CACI."  Pl. Resp. at 18.  SAIC's approach here is similar to CACI's, but CACI's is substantively distinguishable for at least one reason.  Part of CACI's standard operating procedure (SOP) for ████████ which SAIC does not mention, is that CACI ████████ Tab 64 at AR 720.  We see no mention of ████████ in SAIC's uote.  Therefore, this

---

[2] Elsewhere, SAIC mentions a "chatbot," but we have not found a reference to it being AI-powered.  *See* Tab 88 at AR 2024.

aspect of CACI's  uote is substantively distinguishable, and SAIC's claim of disparate treatment should be dismissed. *Off. Design Grp.*, 951 F.3d at 1372.

### B. DHS Fairly Evaluated the Quotes

In our opening brief, we set out the evaluator comments side-by-side to show that the evaluators made a comparable number of favorable comments for the three  uote sections at issue. USA Mot. at 23, 25, 27. Therefore, regardless of whether the  uotes were substantively indistinguishable, the result was a fair and evenhanded evaluation.

SAIC offers no persuasive rebuttal. For e  ample, SAIC argues that it was not enough for DHS to ma  e one favorable evaluation comment for both SAIC and CACI with respect to their service level agreement approaches. Pl. Resp. at 15. SAIC insists that it is challenging the "omission of a specific credit" that CACI received, which DHS could not "cure" by ma  ing a favorable credit about a different aspect of SAIC's service level agreement approach. *Id.* If SAIC were correct, then DHS would have had to ma  e identical comments about two  uotes that were far from identical.

### C. SAIC Was Not Prejudiced By Any Error In The Factor 3 Evaluation

In our opening brief we argued that CACI cannot show prejudice with respect to Factor 3, because CACI received the highest possible rating of "High Confidence" for that evaluation factor. USA Mot. at 27  Tab 101 at AR 2672  *Trillion ERP Venture Tech LLC v. United States*, 161 Fed. Cl. 531, 549 (2022)  *Vantage Assocs., Inc. v. United States*, 59 Fed. Cl. 1, 25 (2003).

SAIC attempts to distinguish *Trillion* and *Vantage* on the ground that in both cases, the agency found the  uoters to be technically e  ual *overall*, rather than under one factor. That factual difference does not matter. Our argument here is specific to Factor 3, where both CACI and SAIC received e  ual technical ratings of high confidence. Here, as in the cases we cited,

11



there is no reason to thin   that DHS would have chosen SAIC instead, if only the evaluators had included more supporting comments in an area where SAIC already had the highest rating.

III.     DHS Rationally Conducted The Best Value Tradeoff

As we e plained in our cross-motion, SAIC's challenge to the best value tradeoff is unavailing.  USA Mot. at 28-32.

A.     DHS Reasonably ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.

SAIC offers one new argument, which is that the agency erred by ▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Pl. Resp. at 22.

SAIC's new argument contains several flaws, the first being that SAIC is too late to raise it.  SAIC is alleging an ambiguity in the solicitation.  SAIC does not contend that the solicitation e pressly ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ne.  SAIC merely contends that the solicitation was silent about ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Pl. Resp. at 22.  In other words, SAIC is arguing that the solicitation is ambiguous because it is susceptible to more than one interpretation ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.

That alleged ambiguity, however, was patent, because it was discoverable on the face of the solicitation.  *Oak Grove Techs., LLC v. United States*, 116 F.4th 1364, 1378 (Fed. Cir. 2024)

12

(an ambiguity "is patent if it is an obvious omission, inconsistency, or discrepancy of significance" or "if it could have been discovered by reasonable and customary care" (quoting *Inserso Corp. v. United States*, 961 F.3d 1343, 1349 (Fed. Cir. 2020))). And because the alleged ambiguity was patent, SAIC had to seek clarification or protest before the deadline for quotes, on pain of waiver. *Blue & Gold Fleet, LP v. United States*, 492 F.3d 1308, 1314 (Fed. Cir. 2007). SAIC did not, and thus waived its argument that the agency should not have treated price as the least important factor. *Id.* at 1315.

SAIC's new argument is doubly untimely because it was raised for the first time in a response brief. Arguments made for the first time in a response brief, not in an opening motion for judgment on the administrative record, are waived. *Ahtna Logistics, LLC v. United States*, 163 Fed. Cl. 488, 516 (2022) (citing *Novosteel SA v. United States*, 284 F.3d 1261, 1274 (Fed. Cir. 2002)).

Finally, even if SAIC had not waived its new argument, it would still fail on the merits. The Court denied a protest involving similar language in *HWA, Inc. v. United States*, 78 Fed. Cl. 685 (2007). In that case, the solicitation provided that "Technical Capability, Past Performance, and Price are in descending order of importance and, when combined, are more important than Socio Economic Factors." *Id.* at 705. The protester claimed that though the solicitation was silent as to the relative standalone weights, the only reasonable interpretation was that the socio-economic factor was more important than the other three factors standing alone. *Id.* The Court disagreed, finding that various weightings of the solicitation factors would be consistent with the solicitation, including weightings that made the socio-economic factor least important, and therefore the protester's interpretation was not mandated. *Id.* at 705-06. Having found that "various interpretations" of the relative standalone weightings were possible, and that the agency

████████████████████████████████

"applied factor weights consistent with the re uirements of the amended RFQ," the Court denied

the protest. *Id.* at 706. The same logic applies to the merits of SAIC's claim the agency's

interpretation of the relative factor weighting was reasonable and consistent with the solicitation.

B. DHS Rationally Determined Best Value and Documented Its Rationale

SAIC claims repeatedly that DHS did not assess ████████████████████████

████. Pl. Resp. at 21, 22, 24.

SAIC's argument is easily contradicted by the record. The contracting officer presented

the pricing comparison in various ways in his best value recommendation. He displayed the

evaluated pricing in a bar chart. Tab 103 at AR 2710. He compiled the pricing for each Phase 3

uoter into a paragraph with narrative comparisons. *Id.* He computed an average total labor rate

for all five Phase 3 uoters, then compared each uoter to the average in percentage terms. *Id.*

Finally, he included a distribution curve showing that ████████████████████████

████████████ *Id.* at AR 2711.

The contracting officer's sophisticated price analysis leaves no doubt that he considered

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████ is part of the record and not, as SAIC claims, a post hoc assertion. Pl. Resp. at 23.

The contracting officer also e plained why he thought ████████████████████

*Id.* at AR 2713. So did the source selection official. Tab 104 at AR 2715-18. He included the

contracting officer's bar chart displaying the price comparison. *Id.* at AR 2715. After discussing



the technical and price analyses, he stated his opinion that CACI's uote represented the overall best value, adopting the si specific reasons cited by the contracting officer. *Id.* at AR 2717. He concluded, "



As a result, I select the CACI submission as providing better value than the SAIC submission." Tab 103 at AR 2718.

SAIC also appears to argue that DHS was re uired to uantify ▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *E.g.*, Pl. Resp. at 22 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇) *id*. at 23-24 (arguing that DHS failed to "▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇). SAIC is incorrect. DHS was not re uired to uantify ▇▇▇▇▇▇▇▇▇▇▇▇. Even under FAR Part 15, uantification is not re uired. 48 C.F.R. § 15.308 ("Although the rationale for the selection decision must be documented, that documentation need not uantify the tradeoffs that led to the decision."). This ac uisition used FAR Part 8 procedures, which re uire less documentation of the best value rationale than FAR Part 15. "The very purpose of FAR Part 8 is to provide a more simplified and fle ible approach away from the more formal and rigorous procedures for negotiated procurements." *Allied Tech. Grp., Inc. v. United States*, 94 Fed. Cl. 16, 50 (2010), *aff'd*, 649 F.3d 1320 (Fed. Cir. 2011) (internal uotation omitted).

## IV.    SAIC Has Not Established Prejudice

As we e plained in our opening brief, SAIC has failed to e plain how the errors it alleges could affect the award decision. Thus, SAIC has not established prejudice. USA Mot. 32-33.

In response, SAIC claims that any error that would have affected its technical rating would be sufficient. Pl. Resp. 28-29.

████████████████████████████████████████

SAIC is incorrect.  There is no presumption of prejudice in a bid protest.  *Sys. Stud. & Simulation, Inc. v. United States*, 22 F.4th 994, 998 (Fed. Cir. 2021) ("there is no starting point of presumed prejudice")  *see also DynCorp Int'l, LLC v. United States*, 10 F.4th 1300, 1308 n.6 (Fed. Cir. 2021) ("The APA does not provide an e ception to the prejudicial-error rule for arbitrary and capricious action.").  Further, the Court often finds that minor errors are insufficient to establish prejudice.  *E.g.*, *Garrett Elecs., Inc. v. United States*, 163 Fed. Cl. 632, 674 (2023) (denying protest where improper assignment of wea ness had little, if any, impact on the best value analysis)  *LB&B Assocs., Inc. v. United States,* 160 Fed. Cl. 710, 738 (2022) (finding no prejudice where best value decision rested on the awardee's strengths, which the protester had not challenged)  *Constellation W.*, 125 Fed. Cl. at 546 (finding no prejudice where plaintiff failed to show that erroneous assignment of wea ness changed the best value analysis).

V.     SAIC Is Not Entitled To Injunctive Relief

As we e plained in our opening brief, even if SAIC were entitled to relief (which it is not), the most appropriate relief would be a remand for corrective action, rather than an injunction.  USA Mot. at 34.  SAIC does not appear to respond to this point.

CONCLUSION

For these reasons, the United States respectfully re uests that the Court grant our cross-motion for judgment on the administrative record, and deny SAIC's motion for judgment on the administrative record.  The Court should also deny SAIC's motion for injunctive relief.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTH
Director

16

███████████████████████████████

                              /s/ Douglas K. Mic le
                              DOUGLAS K. MICKLE
                              Acting Deputy Director

OF COUNSEL
                              /s/ oshua A. Mandlebaum by Douglas K. Mic le
ROGER A. HIPP                  OSHUA A. MANDLEBAUM
Senior Attorney               Senior Trial Counsel
Office of the General Counsel  Commercial Litigation Branch
Department of Homeland Security Civil Division
                              Department of ustice
                              P.O. Bo  480
                              Ben Fran lin Station
                              Washington, D.C.  20044
                              Tel  (202) 532-5409
                              joshua.a.mandlebaum   usdoj.gov


December 19, 2025            Attorneys for Defendant

17